# CHARLESTON.

BENNETT v. HARPER *et ux.*

Submitted February 3, 1892.—Decided April 16, 1892.

1. WILLS—ELECTION.
In order to put a party to his election under a will it is necessary that the testator shall have given to another something that belongs to the party required to elect; and that he shall have given to the latter directly, not derivatively or indirectly, a substantial donation by the will.

2. FRAUD.
Courts of equity will not only interfere, in cases of fraud, to set aside acts done, but they will also, if acts have by fraud been prevented from being done, interfere and treat the case exactly as if the acts had been done; and this they will do by converting the party, who has committed the fraud and profited by it, into a trustee for the party in whose favor the act would otherwise have been done.

3. WILLS—GIFT.

A testator devised a farm of six hundred acres to the complainant, one of his daughters, which farm he had previously given to the husband of another of his daughters by voluntary deed; said husband having, during the life of the testator, been made aware of the contents of his will, and that, in order for it to be effective to bestow any benefit upon the plaintiff, it would be necessary for him to surrender the former voluntary donation, and that the will was made upon that condition. *Held* that, the said voluntary donee *inter vivos* having assented to such condition, or having lain by and acquiesced without objection or remonstrance, thereby securing to himself and wife the whole property designed by the testator to be divided between his two daughters, this conduct was such as to render him a trustee for the complainant to the extent of the interest she would have taken under her father's will.

*W. F. Dyer* for appellants cited 30 Gratt. 255; 79 Va. 60; 40 Am. Rep. 39; 15 W. Va. 444.

*G. A. Blakemore* for appellee cited 82 Va. 352; 27 W. Va. 215; 75 Va. 68; 22 Gratt. 323; 15 W. Va. 479.

LUCAS, PRESIDENT:

In 1871, Coplin Thompson, an aged man, who had lived for many years with Elizabeth Skidmore on his farm, which was a large one, in Pendleton county, was the reputed father of several daughters by said Elizabeth Skidmore. These daughters were all married, and were the appellee, Mary Bennett, and Martha Harper, one of the appellants, and apparently Julia Ann Adamson, and possibly Margaret Bland. In the year mentioned above, he, wishing perhaps to advance Martha Harper, conveyed to her husband, by deed dated April 12th, in consideration of the sum of two hundred and fifty dollars, a tract of land containing six hundred acres, worth from one thousand five hundred dollars to two thousand dollars. Appellants took possession of the six hundred acres, and lived on it for years.

On the 13th day of May, 1890—a little more than nine years after the deed was made to Harper—Coplin Thompson made and published his last will and testament, and died in May, 1880. By the provisions of this will he gave to Julia Adamson, for her lifetime, and after her death to the heirs of her body, a tract of land on the east side of

Spruce mountain; and to the appellee, Mary Bennett, he gave all the lands on the west side of Spruce mountain, "including the lands deeded to Reuben W. Harper." The home place—the land on which Thompson lived when he made his will and died—was devised to Martha Harper. Martha Harper and her husband, at the time of Thompson's death, were living on the six hundred-acre tract devised to the appellee, Mary Bennett. In a very brief time they moved from there to the land devised to Martha Harper, and have resided on it continuously since; and with the exception of about a year, from the spring of 1883 to the summer of 1884, they have been in possession of the six hundred-acre tract also. On the two hundred and fifty dollars mentioned in the deed from Thompson to Harper eighty one dollars and fifty cents only were ever paid.

In December, 1885, Mary Bennett filed her bill in chancery in the Circuit Court of Pendleton county against Reuben W. and Martha Harper. The bill is somewhat ambiguously drawn, and, were it not for the prayer for general relief, it would be difficult to know what relief, if any, could be intended, or in fact what was desired. It sets up the facts as above detailed, and then proceeds to aver some sort of a verbal contract or agreement under which the will was made, whereby it was supposed that Reuben W. and Martha Harper agreed to surrender the six hundred-acre tract to the plaintiff, and to accept the home-tract in place thereof, in consideration that the will should be so made. And so the prayer of the bill is not that the Harpers should be put to their election, "but that said Reuben W. Harper be decreed to convey said tract of land to the plaintiff." The will and the recorded deed of the six hundred acres to Reuben W. Harper are exhibited with the bill.

The defendant R. W. Harper answered, denying the material allegations of the bill. Depositions were taken on both sides. Suffice it to say that no competent or sufficient evidence was introduced to support the alleged "contract." All the evidence relating to transactions and communications held with the testator, given on their own behalf by parties to the suit, and also all declarations of the testator

explanatory of his intentions and motives, must be rejected as incompetent.

Disregarding the special prayer, and obviously administering relief under the general prayer, the Circuit Court, on the 13th of June, 1889, entered a decree settling the principles of the case as follows:

"Decree. This cause came on to be heard this the 13th day of June, 1889, on the bill and exhibits, the separate answer of Reuben W. Harper, and general replication thereto, and the depositions of witnesses; and the defendant Martha Harper, the cause having been regularly set for hearing as to her, still failing to demur, answer, or plead, the bill is taken for confessed as to her. And the cause was argued by counsel. On consideration whereof it is adjudged, ordered, and decreed that defendant Martha Harper shall elect whether she will surrender to the plaintiff, Mary Bennett, the six hundred acres of land devised to her, Mary Bennett, by Coplin Thompson, by his last will and testament, and take and hold as her own the large boundary of land lying on the east side of Spruce mountain, in this county, devised to her, the said Martha Harper, by the same last will and testament of Coplin Thompson, or hold the six hundred-acre tract devised to plaintiff, Mary Bennett, and surrender to plaintiff, Mary Bennett, the land devised to her, defendant Martha Harper; the court being of opinion that the conveyance of the six hundred-acre tract of land to defendant Reuben W. Harper, by Coplin Thompson, by deed bearing date the 12th day of September, 1871, was an advancement to the defendant Martha Harper, the wife of Reuben W. Harper. The defendant Martha Harper has until the first day of the next term to make the election herein required of her."

It is evident from this decree that the Circuit Court came to the conclusion that this was a proper case to require an election on the part of both Reuben W. Harper and Martha Harper, his wife. In order to put a party to his election under a will it is necessary that the will shall have given to another something that belongs to the party required to elect, and that it shall have given to the latter directly, and not derivatively or indirectly, a substantial donation. Thus

it has been held in regard to curtesy, where one claims curtesy in land which his wife holds in opposition to a will under which he obtained benefits, he is not compelled to renounce such curtesy before accepting such benefits. *Cavan* v. *Pulteney,* 2 Ves. Jr. 544. The same doctrine would doubtless apply to dower, although in this case, as we shall hereafter see, it is not necessary to decide these points.

It would appear, therefore, that Reuben Harper can not be put to his election, because nothing is given him by the will. Neither can Martha, his wife, be required to elect, because nothing of hers has been donated. Moreover, the right of election on the part of the husband and wife, respectively, is distinct and separate. This is obviously the case under our married woman's act, since the property donated comes to her as separate estate, and she is at liberty to convey and dispose of it in the same manner, and with like effect, as if she were a single woman. Code, c. 66, s. 2. Even under the common law, as settled by the English courts, *femes covert* were at liberty to make an election under a will which, after being acted upon by other parties, would be upheld by the courts. 2 Redf. Wills, p. 743.

In the present case it is quite obvious that both of the defendants have already made their election; if such it can be called; he by repudiating the will, and holding on to his own property, which was attempted to be donated to another, and she by accepting and enjoying the entire provision made for her in the will. There can be little doubt that the will was made under a mistake on the part of the testator, either with reference to his power of disposition over the farm which he had already given by a voluntary conveyance to his son-in-law Reuben Harper, or by placing too much confidence in the character and generosity, not to say fair dealing, of said son-in-law; and as it is not the province of courts of equity to correct mistakes of this character, and, as we have seen, no case of election, either as to R. W. Harper or his wife, having arisen under the will, we should be compelled to decide that Mrs. Bennett would be cut out entirely of the provision which her father intended for her, and of all benefit whatever under his will,

except for other circumstances appearing in the evidence, which we will now proceed to consider.

As for any conversation or words used by the testator at the time he made and executed the will, as we have seen, no such declarations can be admitted in evidence. *Couch* v. *Eastham* 27 W. Va. 796, 803. Upon examining the testimony in this case, however, we find the following facts: The testator conveyed to the defendant, his son-in-law, R. W. Harper, the farm containing six hundred acres in 1871, for the nominal consideration of two hundred and fifty dollars. This sum he never exacted; and, after paying eighteen dollars thereof in a trade, said Harper, as it appears, never paid nor offered to pay any part of the residue of said nominal purchase-money. He accepted, enjoyed, and occupied this land as a gift from his father-in-law. While so possessed and enjoying this property it came to his knowledge, as he himself testifies, through various sources, that his father-in-law had made a will, by which he devised this same property to another daughter, the plaintiff, Mrs. Bennett, and in lieu thereof donated to Harper's wife, Martha, a farm much more valuable. The testator lived from five to seven miles only from said Reuben; and the latter, in addition to information of the same purport, derived from other sources, was distinctly informed by Mrs. Bennett herself of the contents of the will of the testator as then made. The testimony of Mrs. Bennett and Mr. Harper differs diametrically from that of Mr. Harper as to what reply Harper made when so informed. The Circuit Court evidently believed Mrs. Bennett, and this conclusion of the Circuit Court on a question of evidence, even were we at liberty to do so, we would not feel disposed to disregard or reverse. *Reger* v. *O'Neal*, 33 W. Va., 165 (10 S. E. Rep. 375) and cases there cited.

The question then remains: Did R. W. Harper by his criminal or negligent silence, when he ought to have spoken, induce an illusory provision for Mrs. Bennett, a daughter of the testator, while Harper himself thereby obtained for himself and wife the whole property which the testator intended to be divided between these two daughters? I am satisfied that the evidence abundantly sustains

this proposition, which, if true, renders said R. W. Harper a trustee for Mrs. Bennett to the extent of the benefit intended for her by the will. The doctrine upon this subject is thus clearly stated by Perry on Trusts as follows:

"Courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have by fraud been prevented from being done, interfere, and treat the case exactly as if the acts had been done; and this they will do by converting the party who has committed the fraud, and profited by it, into a trustee for the party in whose favor the act would otherwise have been done. Thus, if a person by his promises, or by any fraudulent conduct, with a view to his own profit, prevents a deed or will from being made in favor of a third person, and the property intended for such third person afterwards comes to him who fraudulently prevented the execution of the will or deed, he will be held to be a trustee for the person defrauded to the extent of the interest intended for him." 1 Perry, Trusts, p. 208, § 181.

The doctrine rests upon the same equity which holds, that, if a man stands by and sees another purchasing land, to which he has a prior claim, and does not disclose it, his concealment is a fraud which forfeits his title. 1 Fonbl. Eq. 151. For a full discussion of this principle, see opinion of Judge TUCKER in *Engle* v. *Burns*, 5 Call 471, 476. See, also, 1 Story, Eq. Jur. § 256.

I take this to be a well-established principle of law, and, without citing further authorities, let us proceed to apply it in this case. The devise to Mrs. Harper was evidently upon the condition that her husband should give up the former voluntary donation of the six hundred-acre farm, made *inter vivos.* R. W. Harper was made thoroughly aware of this fact; yet he lay by and acquiesced, without objection or remonstrance, thereby securing to himself and wife the whole property designed by the testator to be divided between his two daughters. This conduct was evidently such as to render him a trustee for Mrs. Bennett to the extent of the interest she would have taken under her father's will.

While the opinion of the Circuit Court did therefore in

some measure correct the injustice intended to be perpe-
trated by R. W. Harper, yet the decree is erroneous, and
must be reversed and modified to correspond with the views
herein expressed. R. W. Harper must be held to be a
trustee for Mrs. Bennett, the plaintiff, to the amount of the
value of the six hundred acre tract as to which, if thought
necessary, further evidence may be taken, with interest
from the date of the institution of her suit; and the said
sum must be decreed a lien on said six hundred-acre tract
conveyed by the deed of April 12, 1871, with option to the
said R. W. Harper, within a proper and sufficient time, to
relieve the tract of said lien by payment of said amount,
or, at his option, to make complainant a deed for said tract;
but, in default of such payment or such deed, the said tract
must be sold and subjected according to the methods pre-
scribed by courts of equity. Costs to appellee.

BRANNON, J., (*dissenting*.) The Court is unanimous in
giving relief to Mrs. Bennett. But what shall it be?
Harper being informed that Thompson proposed to devise
to Harper's wife what we called the "home farm," and to
Mrs. Bennett the tract of six hundred acres, which Thomp-
son had some years. before conveyed to Harper, he
(Harper) assented, and said, "Let the will be so." Thus
Harper placed himself in such relation to the transaction as
disables and estops him from retracting, because to allow
it would work a fraud upon Mrs. Bennett. Thus Harper,
in consideration of benefit to his wife, and to his own
possible curtesy, in her securing the home place, which was
much more valuable than the six hundred acres, agreed to
treat, and that the testator should treat, his wife as owner
of the six hundred acres, and so brought himself and her
within the principle of the doctrine of election as adminis-
tered by courts of equity, and justified the Circuit Court in
putting Mrs. Harper to an election. It will not do to say
that this would give Mrs. Bennett the entire home farm in
case Harper and wife elected to retain the six hundred acres
(and the home farm is of greater value than the six hundred
acres); for if Mrs. Harper and her husband prefer to retain
the six hundred acres, then, after election, compensation to
Mrs. Bennett for her disappointment in not getting the six

hundred acres would be made by charging its value on the home farm; not in giving Mrs. Bennett the whole home farm, agreeably to the principle of compensation in such case as administered in equity. 2 Story, Eq. Jur. § 1085; 1 Pom. Eq. Jur. §§ 467, 468.

The decree, in specifying the character of election enforced upon Mrs. Harper, is too broad in the fact that it compels her to choose whether she will surrender to Mrs. Bennett the six hundred-acre tract, and take under the will the land devised to her, Mrs. Harper, or surrender to Mrs. Bennett the devised land and retain the six hundred-acre tract; whereas it should have compelled Mrs. Harper to elect whether she would surrender the six hundred-acre tract, or keep it, and pay Mrs. Bennett its value, to be charged on the devised land. This view is strengthened by the fact that the conveyance by Thompson to Harper of the six hundred acres was most likely an advancement by Thompson to Mrs. Harper, made to him by her consent, presumably.

But suppose we are told that the principle of election can not be applied to the case, because Harper owned the six hundred-acre tract, and not his wife, and that Harper is not a person contemplated by the will, and his acquiescence in the scheme of the will can not operate upon him so as to bring the case within the principle of election, still the fact remains that the home farm was given by the will to Mrs. Harper, with the tacit condition or understanding on the giver's part that her sister should have the six hundred acres, and we can say that, if he had known that Mrs. Harper's husband would refuse to give up the six hundred acres to Mrs. Bennett, he certainly would not have given Mrs. Harper the valuable home farm, thus giving her that large bounty, allowing her husband to retain the six hundred acres, and leaving Mrs. Bennett without a dime of his bounty.

Finding it impossible to carry out exactly the design of the will, by reason of Harper's refusal to surrender his title to the six hundred acres, equity, by analogy, should do just what it would do if Mrs. Harper had owned the six hundred-acre tract, and elected to retain it. It is a matter of no consequence how it comes about that Mrs. Bennett can

not get the six hundred acres as the testator designed, whether from the refusal of Harper to surrender his title to it, or from Mrs. Harper's refusal to surrender it, if she were its owner; because the one result in either case exists as a fact—that is, that she can not get the six hundred acres.

What, then, would a court of equity do if Mrs. Harper owned the six hundred acres, and refused to surrender it to Mrs. Bennett? It would give Mrs. Bennett compensation for its loss to the extent of its value, and charge the amount on the land devised to Mrs Harper by the will, giving Mrs. Harper any surplus. In the present case we should do the same thing by analogy.

The foregoing opinion of President LUCAS adopts a different road to give relief to Mrs. Bennett. It allows Mrs. Harper to retain the whole of the land devised by the will to her, free of any burden, and imposes the burden wholly on her husband on account of his conduct. Perhaps, to use a familiar expression, that is serving him right, and may be justified in equity, as far as he may speak. But, if this course is adopted, I can not clearly see why equity would not give Mrs. Bennett the whole six hundred acres, just as the testator and Harper intended; for, if Harper's conduct—his agreement that the will should be made as it was made—is such as to justify a charge on his six hundred acres to the measure of its own value, why is it not sufficient to compel him to relinquish it entirely? If that conduct is sufficient to justify us in going half way, why not the whole way?

REVERSED.