CONSOLIDATION COAL COMPANY,
a corporation, Plaintiff,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

UNITED STATES STEEL CORPORATION, a corporation, Plaintiff,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

YOUNGSTOWN MINES CORP., a
corporation, Plaintiff,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

EASTERN ASSOCIATED COAL CORP.
and Sterling Smokeless Coal Company, corporations, Plaintiffs,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

OLGA COAL COMPANY, a corporation,
Plaintiff,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

RANGER FUEL CORPORATION, a
corporation, Plaintiff,

v.

DISABLED MINERS OF SOUTHERN
WEST VIRGINIA, an unincorporated association, et al., Defendants.

Civ. A. Nos. 1216, 1218, 1220–1223.

United States District Court,
S. D. West Virginia,
at Bluefield.

July 9, 11, 13, 1971.

Harold R. Schmidt, Pittsburgh, Pa., Charles A. Tutwiler, Welch, W. Va., Rus-

sell L. Furbee, Fairmont, W. Va., for Consolidation Coal Co., Youngstown Mines Corp., Eastern Associated & Sterling Smokeless, Olga Coal Co.

Charles M. Love, Charleston, W. Va., for U. S. Steel Corp.

Ray E. Ratliff, Jr., Charleston, W. Va., for Association of Disabled Miners.

Richard M. Bank, Charleston, W. Va., for Robert Payne, Elmer Brown, Roma Cook, Bernard "Red" Cox, Levi Daniel, Jimmy Ellis, Leon Foley, John Mendez, George Mounts, Clifford Ratliff and James Turnstalle.

CHRISTIE, District Judge:

### PROCEDURAL BACKGROUND

On July 9, 1970, Consolidation Coal Company instituted Action No. 1216 in this court to enjoin and restrain defendants from effectuating a restraint of interstate commerce in the production, sale and transportation of bituminous coal throughout the United States—and to recover damages for the injury resulting to it therefrom—alleging that a conspiracy was being effectuated particularly in the Southern District of West Virginia with respect to certain of its mines there. The action also proceeded upon the basis that the acts complained of constituted tortious interference with employment contracts and the expected economic benefits from continued performance of work by plaintiff's employees. On July 11, 1970, United States Steel Corporation instituted a similar action in this court, Action No. 1218, and on July 13, 1970, Youngstown Mines Corp., Eastern Associated Coal Corp.–Sterling Smokeless Coal Co., Olga Coal Company, and Ranger Fuel Corporation all instituted similar actions in this court that are, respectively, Actions Nos. 1220, 1221, 1222 and 1223.

When each action was instituted, the plaintiff moved for and there was issued, based on the verified complaint and supporting affidavits, a temporary restraining order which restrained the defendants and others from doing certain acts therein set forth in detail.

Bond in the amount of $5,000 was posted in each case, duly approved and filed.

In each case, the plaintiff moved for leave to take expedited depositions. In the Consolidation Coal case, No. 1216, the depositions of six of the named defendants were taken on July 14, 1970, and a transcript thereof is on file in that case.

A hearing on Consolidation's motion for a preliminary injunction began on July 16, 1970, and at that time, by stipulation and order, the United States Steel case, No. 1218, was consolidated with Consolidation's case No. 1216 for purposes of the hearing. The hearing continued throughout the day of July 16, 1970, and was prepared to resume on July 17, 1970, when it appeared to the Court that there was a possibility of a practical resolution of the problem, and as a result, by stipulation and order and consent of all parties, the temporary restraining order was extended indefinitely and until further order of the Court.

However, by Monday, July 20, 1970, it was evident to the Court and all parties that the hoped-for practical resolution of the matter was not to be forthcoming and, accordingly, resumption of the hearing was scheduled for, and began, July 22, 1970. At that time, the hearings in the other four cases, Youngstown Mines Corp., No. 1220; Eastern Associated Coal Corp.–Sterling Smokeless Coal Company, No. 1221; Olga Coal Company, No. 1222 and Ranger Fuel Corporation, No. 1223, were consolidated with the hearing in progress with the effect that all evidence and proceedings in each case would be part of the evidence and proceedings in all the cases and the temporary restraining order in each case, by consent of counsel, was extended indefinitely and until the adjudication by the Court as to whether or not a preliminary injunction should be issued in all the consolidated cases.

On that basis, the hearing continued on July 22, 23, 27, 28, 29, 30, 31, August 10 and 11, 1970. The Association of Disabled Miners and Widows, Inc., a non-profit corporation, was dismissed from the cases and, by amendment, the Disabled Miners of Southern West Virginia, an unincorporated association, was substituted, and related changes were made in the Complaints.

## STATEMENT OF THE CASE

Each of the plaintiffs is a corporation engaged, *inter alia*, in mining bituminous coal in the Southern District of West Virginia, and each plaintiff has mines in the district from which it produces coal and ships it in substantial quantities in interstate commerce.

Beginning on or about June 21, 1970, interferences with the production and shipment of bituminous coal in interstate commerce began to occur and, with some interruptions, the same continued until quite recently and the threat of their resumption has not entirely dissipated.

It is alleged that the work stoppage or interference is the result of a combination or conspiracy to restrain trade in interstate commerce by disabled miners and widows who are dissatisfied with the operation of the United Mine Workers of America Welfare and Retirement Fund of 1950, an independent trust set up and operated under and in accordance with the applicable provisions of the Labor Management Relations Act, 1947. As a matter of completeness, although the operators and the union each, respectively, have the right, under the applicable provisions of the collective bargaining agreement, to appoint one of the three trustees and those two then select a neutral third trustee, it is nowhere asserted that the coal operators have any right whatsoever to intermeddle in the operation or supervision of the Fund, since all of the trustees are fiduciaries whose duties are governed by the law and the factual circumstances relating to the Fund. Accordingly, no decision with respect to these matters is involved here.

It is further alleged that there is, in these cases, no labor dispute involving any of the plaintiffs and their employees, and that the purpose and scheme of the combination and conspir-

acy was to prevent and coerce plaintiffs' employees, by the use of pickets at the mines, from entering therein and mining coal for shipment in interstate commerce, in the hope and with the expectation that such interferences would in some manner operate to bring such pressure to bear upon the trustees of the welfare fund as to force them to liberalize its administration to accommodate the demands of the disabled miners and widows of deceased miners, the resultant effect of which has in fact closed many of plaintiffs' mines, has interfered with the interstate shipment of coal and has wrought substantial and irreparable loss, injury and damages to the plaintiffs, and if not restrained and enjoined, will cause them imminent future irreparable loss, injury and damage.

## ISSUES

1. Whether the Court has jurisdiction to grant injunctive relief.

2. Whether the plaintiffs are engaged in interstate commerce.

3. Whether the defendants and/or other members of the designated class and/or others acting in concert with them have combined and conspired to restrain interstate commerce in bituminous coal in violation of the applicable provisions of the Sherman Antitrust law and have done so.

4. Whether the activities of the defendants and/or other members of the designated class and/or others acting in concert with them are protected or validated by any constitutional guarantees including, but not limited to, the First Amendment to the Constitution of the United States.

5. Whether defendants and/or other members of the designated class and/or others acting in concert with them have committed tortious interferences with employment contracts of the plaintiffs and the expected economic benefits from continued performance of work by plaintiffs' employees.

6. Whether, unless enjoined and restrained, the defendants and/or members of the designated class and/or others acting in concert with them will continue to commit illegal and improper acts.

7. Whether the plaintiffs have suffered and will suffer immediate and irreparable loss, injury and damage by reason of the actions of the defendants and/or other members of the designated class and/or others acting in concert with them.

8. Whether the plaintiffs have an adequate remedy at law.

9. Whether there is a reasonable likelihood that the plaintiffs will prevail upon the ultimate disposition of this case.

10. Whether a preliminary injunction, effective until further order of this Court or pending the ultimate disposition of the case on the merits, should be issued in all the consolidated cases.

## FINDINGS OF FACT

1. The Court has jurisdiction over this action under the provisions of 28 U.S.C.A. 1337; 15 U.S.C.A. § 1 (Sherman Act) and 15 U.S.C.A. §§ 15, 22 and 26 (Clayton Act). The Court also has diversity jurisdiction in No. 1216 and No. 1218 under the provisions of 28 U. S.C.A. § 1332 and pendent jurisdiction in all the cases with respect to the tortious interference cause of action.

2. Each of the plaintiffs has been and is now engaged in the production, sale and shipment of bituminous coal in interstate commerce.

3. There is no labor dispute involved in this case within the purview of the Norris-LaGuardia Act (29 U.S.C.A. § 113(c)) for the reasons, among others, (a) that the defendants and other members of the designated class and others acting in concert with them are not, either together or otherwise, a labor organization, (b) that the matters involved here embody alleged grievances of a number of people—including widows —(actual or allegedly potential beneficiaries of an independent trust known as the United Mine Workers of America

Welfare and Retirement Fund of 1950) against the trustees thereof, and (c) that the objective sought by the defendants and other members of the designated class and others acting in concert with them can only be effected by the trustees of the Fund and not by the plaintiffs. Thus, the Norris-LaGuardia Act, 29 U.S.C.A. Sections 101, 104 and 113, has no application to the instant case and this Court is not thereby divested of jurisdiction to entertain the plaintiffs' suit for injunctive relief.

4. The Court's jurisdiction has not been preempted by the National Labor Relations Board under the Labor Management Relations Act, 1947 or the National Labor Relations Act, 29 U.S.C.A. § 141 et seq., because the defendants and other members of the designated class and others acting in concert with them do not, either together or otherwise, constitute a "labor organization" within the purview of 29 U.S.C.A. Section 152(5), and further because none of the defendants or any members of the designated class or any others acting in concert with them has made any demands of any kind upon the plaintiffs respecting grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work or otherwise.

5. Employees of the respective plaintiffs, at their various mines, have worked and rendered services steadily, pursuant to employment contracts, without interruption, until the performance of the acts of the defendants and other members of the designated class and others acting in concert with them, namely, disabled miners and widows and others acting for or on their behalf and/or for the achievement of the same objectives.

6. None of the plaintiffs has any labor dispute of any kind with its employees and/or their collective bargaining representatives and if the defendants and other members of the designated class and others acting in concert with them had not performed the improper acts hereinafter set forth in these findings of fact, the respective plaintiffs would have received the benefit of the continued services of their employees and would have continued to maintain the flow of bituminous coal in interstate commerce.

7. The defendants and other members of the designated class and others acting in concert with them have entered into a combination or conspiracy intentionally to restrain the production and flow of bituminous coal in interstate commerce throughout a substantial portion of the United States for the illegal purpose of substantially restricting the supply of bituminous coal to the electricity generating and steel producing industries in the United States. This was and is being done in order to bring pressure upon the trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 so as to influence said trustees in the performance of their fiduciary duties and to make them liberalize the benefits made payable by said Fund to disabled miners and widows.

8. The defendants and other members of the designated class and others acting in concert with them have performed overt acts in effectuation of the aforementioned combination and conspiracy in that they have picketed, coerced, induced and otherwise interfered with employees of the respective plaintiffs in the performance of their duties and functions as coal miners in the operation of the mines of the plaintiffs, and have thereby disrupted and restrained the production and flow of bituminous coal in interstate commerce in a substantial part of the bituminous coal producing area of the United States.

9. The aforementioned combination and conspiracy and the overt acts carried out pursuant thereto constitute an unlawful restraint of interstate commerce in bituminous coal in violation of Section 1 of the Sherman Act.

10. The interruption in production and shipment of bituminous coal and the resulting interruption of the supply of coal in interstate commerce caused by the illegal activities of the defendants

and other members of the designated class and others acting in concert with them have caused the plaintiffs and the public generally great and irreparable loss, injury and damage, and, if continued, would continue to cause the same to the plaintiffs and the public.

11. The aforementioned acts of the defendants and other members of the designated class and others acting in concert with them also constitute tortious interference with the employment contracts of the plaintiffs and the plaintiffs' expected economic benefit from the continued performance of work of their employees who were induced and/or coerced by the defendants and other members of the designated class and others acting in concert with them into a cessation and/or interruption of work.

12. The defendants and other members of the designated class and others acting in concert with them have committed and are committing illegal acts and will continue to do so unless enjoined and restrained.

13. The cessation and/or interruption of work of plaintiffs' employees was not voluntary but was instigated and caused by the acts of the defendants and other members of the designated class and others acting in concert with them.

14. There were and are ample legitimate and lawful means and methods available to the defendants and/or other members of the designated class and/or others acting in concert with them to petition for redress of their alleged grievances against the trustees of their United Mine Workers of America Welfare and Retirement Fund of 1950 without tortiously interfering with and causing plaintiffs' employees involuntarily to breach their obligation to the plaintiffs under the National Bituminous Coal Wage Agreement of 1968 and interfering with the plaintiffs' expected economic benefit from the continued performance of work of their employees, and such unlawful activities of the defendants and/or other members of the desig-

nated class and/or others acting in concert with them were and are not in any way protected or validated by any constitutional guarantee, including, but not limited to, the First Amendment to the Constitution of the United States, for it is an established principle of constitutional law that picketing in furtherance of an unlawful purpose may not be protected under the guise of freedom of speech or assembly.

15. The plaintiffs have no adequate remedy at law for the reason that much of the loss, injury and damage suffered by the plaintiffs as a result of the aforementioned acts of the defendants and other members of the designated class and others acting in concert with them, including, but not limited to, loss of customers, employees and good will, cannot be calculated and compensated for in money damages. The plaintiffs have no adequate remedy at law for the further reason that they will be required to commence a new legal action each time the defendants and other members of the designated class and others acting in concert with them commit the aforementioned acts in the future, thereby causing a multiplicity of litigation.

16. By their activities and the resultant effects thereof upon the coal industry and industries dependent upon that industry for their fuel, metallurgical and chemical needs, the defendants appear to have brought their grievances to the attention of the coal industry, the trustees of the welfare and pension fund, the mine workers union and the public generally. In fact, twenty-three congressmen have already jointly introduced a bill in Congress designed to meet their needs. It is only logical to assume also that, within the limitation permitted by Section 302(c) (5) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 186, and the terms of the agreement setting up the trust fund in question, the matter will be made the subject of proper discussion and appropriate action by the industry and the union at their contract negotiations coming up next year. Thus, the Court can-

not foresee at this time where or how the cause of the grievants can be advanced by a prolongation of any activity having for its objective the closing of mines and the concomitant loss of revenue to the welfare and pension fund. On the other hand, it is clear from the evidence adduced, and the Court so finds, that the plaintiffs and general public will suffer irreparable injury and damage if such activities are permitted to be resumed. The conclusion, therefore, is inescapable that the plaintiffs and general public will suffer greater injury by denial of a preliminary injunction than will the defendants by the granting of a preliminary injunction.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties in these actions.

2. Jurisdiction of these actions is conferred by the provisions of 28 U.S.C. A. § 1337; 15 U.S.C.A. § 1 (Sherman Act) and 15 U.S.C.A. §§ 15, 22 and 26 (Clayton Act). There is also diversity jurisdiction in No. 1216 and No. 1218 under the provision of 28 U.S.C.A. § 1332 and pendent jurisdiction in all the cases with respect to the tortious interference cause of action.

■ 3. This Court is not deprived of jurisdiction to grant injunctive or similar relief by any provision of the Norris-LaGuardia Act (29 U.S.C.A. Section 101 et seq.) nor by any of the provisions or exemptions of the antitrust laws contained in 15 U.S.C.A. Section 17.

■ 4. This Court's jurisdiction has not been preempted by the National Labor Relations Board under the Labor Management Relations Act, 1947 or the National Labor Relations Act, 29 U.S.C. A. § 141 et seq., because the defendants and other members of the designated class and others acting in concert with them do not, either together or otherwise, constitute a "labor organization" within the purview of 29 U.S.C.A. Section 152(5), and their actions and con-

duct here in question are neither arguably protected nor prohibited thereby.

5. The defendants and other members of the designated class and others acting in concert with them have committed and are committing illegal acts and will continue to do so unless enjoined and restrained.

6. Employees of the respective plaintiffs, at their various mines, have worked and rendered services steadily, pursuant to employment contracts, without interruption, until the performance of the acts of the defendants and other members of the designated class and others acting in concert with them, namely, disabled miners and widows, for the achievement of the same objectives.

7. The plaintiffs have no labor disputes of any kind with their employees and/or their employees' collective bargaining representatives and if the defendants and other members of the designated class and others acting in concert with them had not performed the improper acts hereinabove set forth in the findings of fact, the respective plaintiffs would have received the benefit of the continued services of their employees and would have continued to maintain the flow of bituminous coal in interstate commerce.

■ 8. The defendants and other members of the designated class and others acting in concert with them have entered into a combination or conspiracy intentionally to restrain the production and flow of bituminous coal in interstate commerce throughout a substantial portion of the United States for the illegal purpose of substantially restricting the supply of bituminous coal to the electricity generating and steel producing industries in the United States, and have committed overt acts pursuant to said combination or conspiracy by bringing pressure upon the trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 so as to influence said trustees in the performance of their fiduciary duties and to make them liberalize the benefits made payable by said Fund to disabled miners and wid-

ows, in violation of 15 U.S.C.A. § 1, commonly known as the Sherman Act.

9. The aforementioned acts of the defendants and other members of the designated class and others acting in concert with them also constitute tortious interferences with the employment contracts of the plaintiffs and the plaintiffs' expected economic benefit from the continued performance of work of their employees who were induced and/or coerced by the defendants and other members of the designated class and others acting in concert with them into a cessation and/or interruption of work.

10. The activities of the defendants and/or other members of the designated class and/or others acting in concert with them are not in any way protected or validated by any constitutional guarantee including, but not limited to, the First Amendment to the Constitution of the United States.

11. The plaintiffs and the general public have suffered and will continue to suffer irreparable loss, injury and damage in the future unless the defendants and other members of the designated class and others acting in concert with them are preliminarily enjoined from continuing to commit the illegal acts which they have committed.

12. From the evidence as presented, it is clearly established not only that there is reasonable likelihood, but a very strong probability, that the plaintiffs will succeed at the final hearing on the merits of the cases.

13. The plaintiffs and general public will suffer greater injury by denial of a preliminary injunction than will the defendants and other members of the designated class and others acting in concert with them by the granting of a preliminary injunction.

14. The plaintiffs have no adequate remedy at law for the reason that much of the loss, injury and damage suffered by the plaintiffs as a result of the aforementioned acts of the defendants and other members of the designated class and others acting in concert with them, including, but not limited to, loss of customers, employees and good will, cannot be calculated and compensated for in money damages. The plaintiffs have no adequate remedy at law for the further reason that they will be required to commence new legal action each time the defendants and other members of the designated class and others acting in concert with them commit the aforementioned acts in the future, thereby causing a multiplicity of litigation.

15. The several motions of the defendants to deny or dismiss plaintiffs' motions for preliminary injunction will all be overruled and a preliminary injunction will issue in all the consolidated cases upon the posting of proper bond, which preliminary injunction will remain effective until the determination of these cases upon the merits or until the further order of the Court.

Counsel will prepare an appropriate order overruling defendants' motions to deny or dismiss plaintiffs' motions for preliminary injunction, granting the preliminary injunction as prayed for, and providing for a continuance of bond in like amount as given under the temporary restraining order.

Service of the injunction order may be had upon the defendants by service of a copy thereof on the various counsel of record.

This Opinion incorporates the Findings of Fact and Conclusions of Law in accordance with the provisions contained in Federal Rule of Civil Procedure 52.