294 S.E.2d 260

**Ralph G. BARONE**

v.

**John S. BARONE, as Executor, etc., et al., Appellees, Denese Barone Ellis, Appellant.**

No. 15302.

Supreme Court of Appeals of West Virginia.

July 14, 1982.

Spilman, Thomas, Battle & Klostermeyer and John H. Tinney, Charleston, McQuire, Woods & Battle and John S. Battle, Jr., Richmond, Va., for appellant.

Schrader, Stamp, Byrd, Byrum, Johnson & Campanion and Ronald B. Johnson, Wheeling, for Cloma Barone.

Edwin J. Adams, Chester, for Kathleen Barone Barrett.

Bogarad & Robertson, Martin S. Bogarad and William R. Kiefer, Weirton, for appellee.

HARSHBARGER, Justice:

Mr. John Barone, Sr., died testate, his will having been drawn by his son, John, and signed September 17, 1974, by Mr. Barone in a hospital on his death bed. His sons, John and Ralph, both attorneys, were named co-executors. John[1] had the will probated in December, 1974, and was appointed sole executor.

Several years after probate, Ralph sued his brother, his mother, his sisters, and various others to require distribution of estate assets. John counterclaimed for tortious interference with business interests, libel, and other matters. The parties' depositions were taken, and Denese Barone Ellis, a sister, learned from Ralph's deposition that John wrote their father's will with dispositive provisions that were contrary to their father's wishes.

So, in March, 1979, she counterclaimed and crossclaimed against both brothers for tortious interference with her bequest, and fraud, and undue influence in procuring the will that unjustly enriched the brothers at the expense of other heirs and intended devisees. She sought compensatory and punitive damages of $300,000, removal of John as executor of the estate, appointment of an administrator to complete the estate work, refund of all executor's fees paid to John, and revocation of bequests to Ralph and John so the estate would be distributed by our descent and distribution laws; or impression of a constructive trust on Ralph and John's bequests for the benefit of Barone's rightful heirs.

John, Ralph and other defendants moved to dismiss Ms. Ellis' crossclaim for lack of jurisdiction and failure to state a claim upon which relief could be granted, W.Va. Rules of Civil Procedure, Rule 12(b)(1) and (6), and the trial court granted their motion, declaring her action to be a "collateral attack on a duly probated will."

Two procedures for probate are offered by our Code. Chapter 41, Article 5, Section 5 provides for probate in solemn form that involves notice to all heirs and persons having interest in the will, appointment of a guardian ad litem for any of those who may be disabled; and any person so noticed may contest the admission or refusal to admit the will to probate. The county commission then shall hear the proofs and either reject or accept it for probate. Any person aggrieved by its finding may appeal to the circuit court, whereupon the matter will be litigated "in all respects as if the application for such probate had been originally made to the circuit court." Code, 41–5–7. The proceedings in circuit court may be by jury trial if requested by any party, and may determine "whether the will in question, or if there be more than one, which of them, or what part or parts of either or any of them, is the true will of the decedent ...." Code, 41–5–8.

Every such order or judgment of a county court not appealed from in proceedings for probate in solemn form, or in an ex parte proceeding which has been

---

1. John alleged that Ralph had renounced his co-executor role and testamentary interest in the will. The trial court did not agree.

converted into a proceeding in solemn form by a contest therein, and every such order or judgment of a circuit court on appeal, shall be a bar to a bill in equity to impeach or establish such will, unless upon grounds which would give to a court of equity jurisdiction over other judgments at law. Code, 41–5–9.

The other probate procedure is ex parte, set out in Code, 41–5–10, and proceeds without notice to any party. However, any person entitled to contest the probate may appear before the county commission clerk or before the commission itself at anytime before an order confirming the refusal or admission of the will to probate has been entered, and give notice of contest. The ex parte procedure will then proceed in the same way as if probate had been commenced in solemn form.

Code, 41–5–11 allows any person interested who was not a party to an ex parte probate or was not a party to a solemn form probate, to proceed by bill in equity to impeach or establish a will and have a jury trial about whether that which was offered for probate was the will of a decedent. This bill in equity must be filed within two years from the date of the judgment of the circuit court that has acted upon an appeal from a county commission, or must be within two years from a county commission's order if there was no appeal. Code, 41–5–11.

Ms. Ellis' claims were not based upon these procedures: she was not trying to impeach or establish a will, but was complaining about a tortious injury and also alleging equitable fraud—causes that could not even be heard in the probate proceedings. Therefore, the probate contest statute of limitations did not apply. The timeliness of her cause should be governed by tort and equity limitations rules. We are to decide this limited issue.

We shall first determine whether she stated substantially cognizable claims, and if so was she in the correct court. (Of course, all her allegations will be presumed true as against the dismiss motion. *John W. Lodge Distributing Co. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157, 158 (1978).)

West Virginia has little case law specifically recognizing Ms. Ellis' causes. Our Court discussed a constructive trust remedy for fraud in procurement of a will. A divided court in *Tennant v. Tennant*, 43 W.Va. 547, 27 S.E. 334 (1897), refused to impress such a trust: the court was split two and two, and the trial court's decree denying relief was affirmed. But the court divided on facts, not law. Therein, one Jacob Tennant left a will dividing his estate shares equalling the number of his children. He then gave two shares to one of his sons, Asa, and gave nothing to another son, Milton, explaining that this division was not to discriminate against Milton, but was to enable Milton to get an advance of money from Asa. Milton sued because Asa did not follow an agreement they had made.

Half the court decided that Milton failed to prove the agreement. However, both opinions recognized that equity would establish a constructive trust "where a person obtains a devise or bequest in his own name on promise to hold it for the benefit of another." *Id.*, 43 W.Va. at 550, 27 S.E., at 335. The court continued, quoting *Church v. Ruland*, 64 Pa.St. 432, 443:

> "The trust insisted on here, however, owes its validity not to the will or the declaration of the testator, but to the fraud of the devisee. It belongs to a class in which the trust arises ex maleficio, and in which equity turns the fraudulent procurer of the legal title into a trustee to get at him." *Id.*, 43 W.Va. at 551, 275 S.E. at 336.

Judge Brannon's dissent distinguished cases wherein a trust was established because of actual fraud in the procurement of a will or trust, rather than a failure to keep a promise to perform a trust.

■ There seemed to be a consensus that if by fraud a devisee had procured a will in his favor preventing an intended testamentary gift to someone else, equity will enforce the intended testamentary disposition by impressing a trust in favor of the person defrauded, and treat the actual devisee as a constructive trustee holding title for the rightful beneficiary. *Id.*, 43 W.Va. at 553–554, 275 S.E. at 337. *See*

*Bennett v. Harper*, 36 W.Va. 546, 15 S.E. 143 (1892); *Annon v. Lucas*, 155 W.Va. 368, 185 S.E.2d 343 (1971); *Cf. Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981) (wherein we recognized a constructive trust in a statutory divorce context). It is this very kind of trust that Ms. Ellis seeks.

Our United States Supreme Court long ago recognized equity's jurisdiction to establish constructive trusts for fraudulently deprived beneficiaries. *Broderick's Will*, 88 U.S. (21 Wall.) 503, 22 L.Ed. 599 (1874); *Gaines v. Chew*, 43 U.S. (2 How.) 619, 11 L.Ed. 402 (1844). We find ample support in other state courts. *Monach v. Koslowski*, 322 Mass. 466, 78 N.E.2d 4 (1948); *Latham v. Father Divine*, 299 N.Y. 22, 85 N.E.2d 168 (1949); *Caldwell v. Taylor*, 218 Cal. 471, 23 P.2d 758, 88 A.L.R. 1194 (1933); *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559 (1948); *Briggs v. Richardson*, 273 S.C. 376, 256 S.E.2d 544 (1979); *Ransdel v. Moore*, 153 Ind. 393, 53 N.E. 767 (1899); *Dye v. Parker*, 108 Kan. 304, 194 P. 640 (1921); *White v. Mulvania*, Mo., 575 S.W.2d 184 (1978) (En banc), *reh. den.; Johnson v. Stevenson*, 269 N.C. 200, 152 S.E.2d 214, 218 (1967); *Seeds v. Seeds*, 116 Ohio St. 144, 156 N.E. 193, 197–198, 52 A.L.R. 761 (1927); *Jacobsen v. Jacobsen*, 164 Ohio St. 413, 131 N.E.2d 833, 836 (1956). We are also persuaded by eminent treatise writers. J. Perry, 1 Perry on Trusts and Trustees, § 211 (7th Ed. 1929); 4 Page on Wills (3d Ed. 1962), p. 961; Story, Equity, § 1592 (14th Ed. 1918); 4 Pomeroy's Equity Jurisprudence (5th Ed.) § 1053. *See* Restatement of the Law of Restitution, § 184(g) at 750–51 (1937); Annot., Rights and Remedies Against One Who Induces, Prevents, or Interferes in the Making, Changing, or Revoking of a Will, or Holds the Fruit Thereof, 11 A.L.R.2d 808 (1950); Evans, Torts to Expectancies in Decedents' Estate, 93 U.Pa.L.Rev. 187 (1944). Ms. Ellis' allegations state a cause in equity for a constructive trust.

Equitable fraud actions are not strictly within probate court jurisdiction that is statutorily established and limited to "ascertain[ing] whether any, and if any, how much, of what was so offered for probate, be the will of the decedent," W.Va.Code, 41–5–11. The only issue determinable in a probate court is devisavit vel non,[2] to decide the mechanical integrity of an instrument purporting to be a will. Syllabus Point 3, *Mauzy v. Nelson*, 147 W.Va. 764, 131 S.E.2d 389 (1963); *Powell v. Sayres*, 134 W.Va. 653, 60 S.E.2d 740, 746 (1950); Syllabus Point 3, *Canterberry v. Canterberry*, 118 W.Va. 182, 189 S.E. 139 (1936).

We have acknowledged that questions that may *not* be decided in an impeachment suit are: construction of a will or validity of a bequest, *Mauzy v. Nelson, supra;* specific performance of a contract to make a will, *Mullins v. Green*, 143 W.Va. 888, 105 S.E.2d 542 (1958), *Chitwood v. Collins*, 122 W.Va. 267, 8 S.E.2d 830 (1940); probate of a different document, *Childers v. Milam*, 68 W.Va. 503, 70 S.E. 118 (1911); partition of bequested land, *Cowan v. Cowan*, 133 W.Va. 115, 54 S.E.2d 34 (1949); accounting of the estate, *Canterberry v. Canterberry, supra.*

Ellis' relief is not available in probate court, and therefore, the probate statute of limitations is inapplicable.

Other jurisdictions recognize the inapplicability of a probate contest statute of limitations to actions outside probate court jurisdiction: *Caldwell v. Taylor, supra*, 23 P.2d at 759–760; *Ingle v. Allen*, 53 N.C. App. 627, 281 S.E.2d 406 (1981); *Rutherford v. Buhler*, 89 N.M. 594, 555 P.2d 715 (1976), *reh. den., cert. den.; Latham v. Father Divine, supra*, 85 N.E.2d at 171; *Alexander v. Compton*, 57 Ohio App.2d 89, 385 N.E.2d 638 (1978); *Jacobsen v. Jacobsen, supra; Seeds v. Seeds, supra.*

The timeliness of Ms. Ellis' equitable claim for a constructive trust is, therefore, determined by applicable laches rules. *See generally, Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982), Syllabus Point 3

---

**2.** Devisavit vel non: "The name of an issue sent out of a court of chancery, or one which exercises chancery jurisdiction, to a court of law, to try the validity of a paper asserted and denied to be a will, to ascertain whether or not the testator did devise, or whether or not that paper was his will." Black's Law Dictionary, Fifth Ed. (1979).

and discussion therein; *Warner v. Kittle,* 167 W.Va. 719, 280 S.E.2d 276 (1981).

We have one case that facially conflicts with this opinion. In *Weese v. Weese,* 134 W.Va. 233, 58 S.E.2d 801 (1950), we decided that fraudulent presentation of an earlier will to probate court with knowledge of a more recent one, must be challenged within the two-year probate statute of limitations or both right and remedy are lost. We could distinguish that case because there was fraud on the court rather than fraud in procurement of a will from a testator; but we believe *Weese* is incorrect, too broad, and we disapprove it to the extent that it is inconsistent with this opinion.

■ Ellis' second cause was for tortious interference with her testamentary bequest and it also stated a claim which we now must recognize. No West Virginia case has identified this tort, but several other states have, overtly or implicitly. *Frohwein v. Haesemeyer,* Iowa, 264 N.W.2d 792 (1978); *Cyr v. Cote,* 396 A.2d 1013, 1018–19 (Me.1979); *Hegarty v. Hegarty,* 46 F.Supp. 319 (D.Mass.1942) and 52 F.Supp. 296 (D.Mass.1943); *Jacobsen v. Jacobsen, supra; Casternovia v. Caternovia,* 82 N.J. Super. 251, 256, 197 A.2d 406 (1964); *Allen v. Leybourne,* 190 So.2d 825, 829 (Fla.Dist. Ct.App.1966); *Mitchell v. Langley,* 143 Ga. 827, 85 S.E. 1050 (1915). *See also* Restatement of Restitution, § 184, Comments a and j (1937); Prosser, Law of Torts, § 130 at 951 (4th Ed. 1971).

It is analagous to tortious interference with business interests, *West Virginia Transportation Company v. Standard Oil Company,* 50 W.Va. 611, 40 S.E. 591, 56 L.R.A. 804 (1902), or tortious interference with contractual relations, *Consolidation Coal Company v. Disabled Miners of Southern West Virginia,* 328 F.Supp. 1248, *modified,* 442 F.2d 1261, *cert. denied,* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971).

■ We find tortious interference with a testamentary bequest to be a tort in West Virginia. This tort is not within probate court jurisdiction (see argument, *supra*) and Code, 41–5–11's time limits are inapplicable. Code, 55–2–12 covers the limitations

time, and its count does not begin until that tort is discovered or, by reasonable diligence should have been discovered by the victim. *Accord, Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980).

Reversed.