IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**February 25, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1105

THOMAS S. AND TERESA S. JOHNSON,
Plaintiffs Below, Petitioners

v.

BERTHA KIRBY,
Defendant Below, Respondent

Appeal from the Circuit Court of Monroe County
Honorable Robert A. Irons, Judge
Civil Action No. 09-C-71

AFFIRMED

Submitted: January 9, 2013
Filed: February 25, 2013

Barry L. Bruce, Esq.
Jessica R. Church, Esq.
Barry L. Bruce & Associates
Lewisburg, West Virginia
Attorneys for Petitioners

Jeffry A. Pritt, Esq.
Union, West Virginia
Attorney for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'A circuit court's entry of summary judgment is reviewed *de novo*.' Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 1, *Toth v. Board of Parks and Recreation Com'rs*., 215 W.Va. 51, 593 S.E.2d 576 (2003).

2.      "'"'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. pt. 4, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syl. Pt. 1, *Kimes v. Bechtold*, 176 W.Va. 182, 342 S.E.2d 147 (1986).

3.      Pursuant to West Virginia Code § 41-1-6 (2010), if a testator divorces after executing a will in which the testator's spouse is the sole beneficiary of his or her estate, the divorce automatically revokes the will, unless the will expressly provides otherwise, and the estate passes in accordance with the statutes of intestate succession as if the former spouse failed to survive the decedent.

LOUGHRY, Justice:

Petitioners Thomas H. Johnson (hereinafter "Mr. Johnson") and Teresa S. Johnson (hereinafter "Mrs. Johnson") appeal an Amended Order Granting Partial Summary Judgment entered June 23, 2011, in the Circuit Court of Monroe County, in which the circuit court found Respondent Bertha Kirby to be the sole heir to the Estate of Jesse Francis Kirby, her son, thereby quieting title in her favor to certain real property previously conveyed to the petitioners. Additionally, the circuit court denied summary judgment on the petitioners' claim for unjust enrichment. In this appeal, the petitioners contend that the six-month period of limitations set forth in West Virginia Code § 45-1-11 (2010) applies to preclude the respondent from claiming title to the subject property. This Court has carefully considered the briefs and arguments of the parties, the appendix record, and the applicable legal authority. For the reasons set forth below, the order of the circuit court is affirmed.

## I. Facts and Procedural Background

The relevant facts of this case are, for the most part, undisputed. On March 15, 2006, Jesse Francis Kirby (hereinafter "the decedent") executed a one-page holographic Last Will and Testament in which he left all of his worldly possessions to his wife, Brenda Kirby (hereinafter "Ms. Kirby"). The decedent and Ms. Kirby divorced by Final Divorce Order entered September 1, 2006, and, subsequent thereto, on November 26, 2007, the decedent died.

1

On December 5, 2007, Ms. Kirby presented the decedent's will for probate in the Office of the County Clerk of Monroe County and, on that same date, the county clerk entered a Probate Order admitting the will "to record as the Last Will and Testament of said Jesse Francis Kirby deceased." In connection with the probate of the will, Ms. Kirby completed the Appraisement of Estate and the Fiduciary Record, in which she indicated that the decedent's marital status at death was "divorced" and that she was his former spouse.[1] The county clerk qualified Ms. Kirby as "Executor" of the Estate.[2] Thereafter, on December 20, 2007, the county clerk's office caused to be published in the local newspaper a notice of the administration of the decedent's estate, including the name and address of Ms. Kirby and identifying her as "Executrix."

On June 1, 2008, Ms. Kirby entered into a listing agreement with Mr. Johnson, a real estate agent, and his company, Coldwell Banker Stuart & Watts Real Estate, for the purpose of selling the real property devised to her in the decedent's will. The listing price

---

[1]Both documents were signed and acknowledged by Ms. Kirby and recorded in the county clerk's office.

[2]*See* W.Va. Code § 44-1-2 (2010) (regarding appointment of administrator with will annexed if there is no executor appointed by will) and W.Va. Code § 44-1-4 (2010) (regarding who shall be granted administration). We note that an "executor" is a person appointed by a testator to carry out the provisions of the testator's will, *see* W.Va. Code § 44-1-1 (2010), but that, in the case of the decedent's will, no executor was appointed therein. However, to avoid confusion and because Ms. Kirby was consistently referred to as "Executor" or "Executrix" throughout this matter, we will also refer to her in that manner.

2

was $39,900.00.  According to Mr. Johnson, after the property was listed for sale, he learned there were disputes with a neighbor concerning a boundary line and the ownership of a well serving the property.  Mr. Johnson testified that he advised Ms. Kirby that the disputes "made the property a tough sell at that point" and suggested that she get a survey of the property.  He further testified that she told him she could not afford a survey and asked Mr. Johnson if he would buy the property.  Thereafter, Mr. and Mrs. Johnson, husband and wife, agreed to purchase the property for $11,500.00.

By deed dated July 1, 2008, Ms. Kirby conveyed to the petitioners the subject property, as the sole heir of the Estate of Jesse Francis Kirby, described as two tracts on Dark Hollow Road, Wolf Creek District, Monroe County, West Virginia.  In a letter to the petitioners dated July 17, 2008, William D. Goodwin, the attorney who both drafted the above-described deed and conducted a title search of the subject property, indicated, *inter alia*, that "subject to [his] preliminary title report dated June 30, 2008, free and clear title is conveyed as to" the subject real property.[3]

---

[3]According to a very brief excerpt of the respondent's deposition included in the appendix record herein, the respondent appeared at the county clerk's office within one week of Ms. Kirby's appointment as Executor.  The respondent testified that she told the clerk that Ms. Kirby and the decedent, her son, were divorced and that Ms. Kirby "had no rights to" the house on the subject property.  She further testified that the county clerk "told me it was legal, and I said, it's not, because they were divorced, and I knew at the time what's said in the divorce, that he had got the house and she had got the contents of it in the divorce settlement, so she had no rights to the house."  The respondent testified that the county clerk "was [a] real smart-aleck with me.  He said it was legal and it was going to stay that way."

3

On August 25, 2008, the respondent filed an Objection to Final Settlement, Petition for Removal of Executor, and Demand for Full Accounting (hereinafter "Objection to Settlement")[4] on the ground that her son's divorce from Ms. Kirby subsequent to the execution of his will and prior to his death automatically revoked any disposition of property to her.[5] More specifically, the respondent argued that, pursuant to West Virginia Code § 41-1-6 (2010), she was the sole and lawful heir to the subject property. West Virginia Code § 41-1-6(a) provides as follows:

> **If after executing a will the testator is divorced** or his marriage annulled, the **divorce** or annulment **revokes any disposition or appointment of property made by the will to the former spouse**, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, unless the will expressly provides otherwise. **Property prevented from passing to a former spouse because of revocation by divorce** or annulment **passes**

---

[4]"The jurisdiction for probate matters, such as the appointment and qualification of personal representatives, guardians, committees and curators, and the settlement of their accounts, has been vested by the Legislature in the county commissions or tribunals existing in lieu thereof or the officers of such county commissions or tribunals . . . ." *Haines v. Kimble*, 221 W.Va. 266, 274, 654 S.E.2d 588, 596 (2007) (footnote omitted). *See* W.Va. Code § 7-1-3 (2010) (providing that "[t]he county commissions . . . . shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators and the settlement of their accounts . . . .").

[5]In her brief to this Court and during the hearing on the parties' cross motions for summary judgment, the respondent represented that at the time Ms. Kirby conveyed the property to the petitioners by deed dated July 1, 2008, and the respondent filed her Objection to Settlement on August 25, 2008, the Estate "remained open and unsettled." The petitioners do not dispute the respondent's representation in this regard.

4

**as if the former spouse failed to survive the decedent**,[6] except that the provisions of section three, article three, chapter forty-one do not apply, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse. For purposes of this section, divorce or annulment means any divorce or annulment which would exclude the spouse as a surviving spouse. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. **No change of circumstances other than as described in this section revokes a will.**

*Id.* (emphasis and footnote added). The respondent thus argued that because the decedent left no children, she was his sole heir at law by operation of West Virginia Code § 41-1-6;

---

[6]In this case, the following provisions of West Virginia Code § 42-1-3a (2010) are relevant:

> Any part of the intestate estate not passing to the decedent's surviving spouse under section three of this article, or the entire intestate estate if there is no surviving spouse, passes in the following order to the individuals designated below who survive the decedent:
>
> (a) To the decedent's descendants by representation;
>
> (b) If there is no surviving descendant, to the decedent's parents equally if both survive, or to the surviving parent[.]

It is undisputed that the decedent had no children and that the respondent is his only surviving parent.

that Ms. Kirby should be immediately removed as Executor because "she has absolutely no interest in [the] Estate;" and that Ms. Kirby should be required to provide a full accounting of all estate property to the respondent.

On April 1, 2009, the Monroe County Commission ordered that, pursuant to West Virginia Code § 41-1-6,[7] the decedent's Estate should pass to his heirs at law as if he had no will; that the respondent is the sole heir to the Estate of her son; that Ms. Kirby be removed as Executrix because she is not an heir to the Estate and, thus, "is not included in the class of persons entitled to be appointed as administrator" thereof; that the respondent be appointed as the personal representative of the Estate; and that Ms. Kirby provide the county commission with an accounting of the Estate within thirty days.[8]

On September 9, 2009, the petitioners filed a Petition to Quiet Title to Real Estate, Creditors' Suit Against the Estate of Jesse Francis Kirby, and Claim for Unjust Enrichment, in the Circuit Court of Monroe County. The petitioners alleged that Ms. Kirby properly administered the Estate and she acted in good faith when she sold the subject

---

[7]The April 1, 2009, order of the county commission incorrectly references West Virginia Code § 44-1-6 rather than West Virginia Code § 41-1-6.

[8]Neither the parties' briefs nor the appendix record indicate when or in what manner the petitioners learned that the respondent had been named the sole heir of the Estate and Executor by order of the county commission.

6

property to them "in order to pay debts and claims against the estate."[9] Moreover, according to the petitioners, they incurred costs and expenses, including the purchase price and the improvements they made to the property,[10] in the total amount of $28,583.14. The petitioners maintained that if the circuit court determined that the deed was void, the respondent would be unjustly enriched by the attendant increased value of the property. The petitioners further stated that they were bona fide purchasers for value and that their purchase of the subject property was an arm's length transaction; however, from our review of the appendix record, the petitioners failed to present any legal argument on this issue nor did the circuit court address it in its final order.[11]

---

[9]Ms. Kirby used the proceeds from the sale of the subject property to satisfy a claim for the decedent's funeral expenses in the amount of $6,797.07, as well as to pay the property's real estate taxes. According to the petitioners, a balance of $3,377.40 from the sale of the subject property remains in escrow.

The petitioners also argued that "the sale made by Brenda Kirby as Executrix of the Estate of Jesse Francis Kirby under the voidable Will and having been given the powers by the County Commission to act as Executrix, the Deed to Petitioners is valid[.]" However, as indicated above, the deed to the petitioners dated July 1, 2008, clearly states that Ms. Kirby conveyed the subject property as "the sole heir of the ESTATE OF JESSE FRANCIS KIRBY."

[10]Also included in the appendix record was another brief excerpt of the respondent's deposition in which she testified that she saw someone painting the house on the subject property at some point before she filed the Objection to Settlement.

[11]Likewise, on appeal before this Court, the petitioners again claim that they were bona fide purchasers for value of the subject property and that they did not have notice that Ms. Kirby had no title to convey. However, whether the petitioners were bona fide purchasers for value without notice is not raised as an assignment of error nor is it otherwise argued in this appeal.

7

The respondent filed a Response and Counter-Petition, denying the allegations raised therein, and also arguing, in relevant part, that she was the sole heir to the Estate of her son; that Ms. Kirby had no hereditary interest in or title to the subject real property to convey to the petitioners; that the respondent did not join in the conveyance of the property by deed to the petitioners; and that the deed to the petitioners constitutes a cloud upon the respondent's title and should be declared null and void and set aside so as to remove such cloud.[12]

The parties filed cross motions for summary judgment and on March 21, 2011, the circuit court held a hearing on the matter. In an Amended Order Granting Partial Summary Judgment entered June 23, 2011, the circuit court determined that the facts clearly showed that, pursuant to West Virginia Code § 41-1-6, "Brenda Kirby was not the sole heir of the Estate of Jesse F. Kirby as his 'wife,' and this fact was, or should have been known to the Petitioners at the time of their purchase." According to the circuit court, the decedent's marital status at his death was a matter of public record prior to Ms. Kirby's execution of the deed to the petitioners. The circuit court further concluded that the respondent was

---

[12]The respondent also alleged that Mr. Johnson, in his capacity as the real estate agent retained by Ms. Kirby to sell the subject property, had a fiduciary responsibility to the Estate and that the conveyance of the property to himself and to his wife for the purchase price of $11,500.00 was below fair market value and unfair and inequitable to the Estate. According to the respondent, the conveyance was "therefore voidable upon the election of the Estate, with the Petitioners to bear any loss incurred."

8

acknowledged to be the only surviving heir of the Estate of her son by order of the Monroe

County Commission, which order also replaced Ms. Kirby with the respondent as Executrix.

Moreover, because Ms. Kirby did not possess title to convey to the petitioners, and because

the respondent did not join in the deed to the petitioners, the circuit court concluded that title

to the subject real property should be quieted in the respondent's favor.[13]  Additionally, the

circuit court denied summary judgment as to the petitioners' claim for unjust enrichment.[14]

It is from the circuit court's June 23, 2011, order, that the petitioners now appeal.

## II.  Standard of Review

In this appeal, we are asked to review a circuit court's entry of partial summary

---

[13]*See generally Hyman v. Swint,* 94 W.Va. 627, 631, 119 S.E. 866, 867 (1923) (stating that "[i]n a suit to quiet title to land, the plaintiff should, as a general rule, show three things: (1) that plaintiff has a valid legal and equitable title to the premises; (2) that he has actual possession thereof; (3) that the defendant lays some claim thereto, stating the nature thereof, so far as it is within plaintiff's knowledge").

[14]In its June 23, 2011, order, the circuit court concluded that "[q]uestions of fact exist as to what the Petitioners' beliefs were at the time they made the improvements to the property and also on whether [the respondent] knew of the improvements.  The Court believes that further inquiry concerning the facts is desirable to clarify whether it would be inequitable or unconscionable to permit [the respondent] to avoid payment for the improvements placed on the property by [the petitioners]."  This Court has generally held that "'[t]he entry of an order denying a motion for summary judgment made at the close of the pleadings and before trial is merely interlocutory and not then appealable to this Court.'" *State ex rel. Arrow Concrete Co. v. Hill*, 194 W.Va. 129, 245, 460 S.E.2d 54, 60 (1995) (quoting Syllabus, *Wilfong v. Wilfong*, 156 W.Va. 754, 197 S.E.2d 96 (1973)).  Accordingly, that portion of the circuit court's June 23, 2011, order denying the petitioners' motion for summary judgment on their claim for unjust enrichment is interlocutory and not presently appealable to this Court.

judgment.  It is well established that "'[a] circuit court's entry of summary judgment is reviewed *de novo*.'  Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)."  Syl. Pt. 1, *Toth v. Board of Parks and Recreation Com'rs.*, 215 W.Va. 51, 593 S.E.2d 576 (2003).

## III.  Discussion

The petitioners argue that, under West Virginia Code § 41-5-11, a complaint to impeach a will must be filed within six months from the date of the order of probate entered by the county commission.  It is the petitioners' contention that because the respondent's August 25, 2008, Objection to Settlement was filed more than six months after entry of the December 5, 2007, order admitting the will to probate, the objection was time-barred and the county commission was without jurisdiction to consider it.[15]

West Virginia Code § 41-5-11 provides as follows:

**After a judgment or order entered as aforesaid in a**

---

[15]As their first assignment of error, the petitioners argue that "[t]he Circuit Court erred in upholding the County Commission's decision to accept the challenge to the probated Will because the Commission lacked jurisdiction to make that decision, thus the Circuit Court also lacked jurisdiction."  The petitioners' argument includes an incorrect assertion.  The circuit court did not "uphold" the April 1, 2009, order of the Monroe County Commission because that order was not appealed to the circuit court.  Moreover, it was the petitioners who instituted the present (and wholly separate) action in the circuit court by filing a petition to quiet title of the subject property.

**proceeding for probate ex parte,[16] any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by complaint to impeach or establish the will,** on which complaint, if required by any party, a trial by jury shall be ordered, **to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent**. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. If the judgment or order was entered by the circuit court on appeal from the county commission, such complaint shall be filed within six months from the date thereof, and **if the judgment or order was entered by the county commission and there was no appeal therefrom, such complaint shall be filed within six months from the date of such order of the county commission. If no such complaint be filed within the time prescribed, the judgment or order shall be forever binding**. Any complaint filed under this section shall be in the circuit court of the county wherein probate of the will was allowed or denied.

---

[16]This Court has previously explained that

> [t]here are two procedures for probate set forth in chapter 41, article 5 of the *West Virginia Code*. *W.Va. Code*, 41-5-5 [1923] provides for probate in solemn form, which requires that notice be given to all heirs and persons having interest in the will. *Barone v. Barone*, 170 W.Va. 407, 408, 294 S.E.2d 260, 261 (1982). The second procedure, which is found under W.Va. Code, 41-5-10 [1923], is referred to as ex parte. Under the ex parte procedure, the county commission, or the clerk in vacation of the county commission, may proceed to hear and determine whether to admit or refuse a will to probate without giving notice of its action.

*Cary v. Riss*, 189 W.Va. 608, 611, 433 S.E.2d 546, 549 (1993) (footnotes omitted). In this case, the decedent's will was admitted under the ex parte procedure.

*Id.* (emphasis and footnote added).

In support of their argument, the petitioners rely exclusively on *Cowan v. Cowan*, 133 W.Va. 115, 54 S.E.2d 34 (1949), wherein the decedent's will, naming his wife as his sole beneficiary and executrix, was admitted to probate even though it lacked attesting witnesses. *Id.* at 117, 54 S.E.2d at 35. More than three years later, the decedent's half brother, who would have been the decedent's heir at law in the event of intestacy, brought suit to partition certain land devised to the decedent's wife under the will and for an accounting. *Id.* Although the *Cowan* Court concluded that the testamentary paper at issue was not a valid will because it was not properly witnessed, we emphasized that

> **[t]he validity of [the decedent's] will arises only as an incident to the proof of title to his real estate**. A paper admitted to probate is not subject to collateral attack, although it may be under our statute directly attacked by a proceeding in chancery with bill filed within two years after the date of its probate[17] by a person not made a party to the probate proceeding. . . . Treating this proceeding as an attempted direct attack upon the validity of the will of [the decedent], we are of the opinion that Code, 41-5-11, bars its entertainment after the lapse of two years.

*Id.* at 120, 54 S.E.2d at 37 (emphasis and footnote added). *See* Syl. Pt. 3, in part, *Barone v. Barone*, 170 W.Va. 407, 408, 294 S.E.2d 260, 261 (1982) (holding that "[t]raditional will

---

[17]At the time of the decision in *Cowan*, West Virginia Code § 41-5-11 provided that the applicable period of limitations for impeaching a will was two years. In 1993, the Legislature amended the statute such that the period of limitations became one year. In 1994, the statute was again amended, reducing the limitations period to six months.

12

contests challenging admission to probate of a particular document or portions thereof are limited by the two-year [now six-month] statute of limitations in W.Va. Code, 41-5-11."). Thus, in *Cowan*, this Court concluded that "[t]he probate was effective to establish the paper in question as the will of [the decedent] and that paper did vest title to the real estate of which he died seised and possessed in [his wife][.]" 133 W.Va. at 121, 54 S.E.2d at 37.

In the case *sub judice*, the petitioners argue that although, pursuant to West Virginia Code § 41-1-6, the decedent's will became invalid when the decedent and Ms. Kirby divorced prior to the decedent's death, the December 5, 2007, order admitting the will to probate "served to validate" it and make it "effective" under *Cowan*. The petitioners further argue that the respondent's Objection to Settlement was a collateral attack on the will that was time-barred under *Cowan* and West Virginia Code § 41-5-11 because it was filed more than six months after entry of the county commission's December 5, 2007, probate order and, thus, the county commission was without jurisdiction to consider it.

The petitioners have misapprehended the effect that the divorce of the decedent and Ms. Kirby had upon the decedent's will under West Virginia Code § 41-1-6 and, in turn, have misapplied *Cowan* to the facts of this case. As indicated above, West Virginia Code § 41-1-6 states, in relevant part, that "[i]f after executing a will the testator is divorced . . . the divorce . . . revokes any disposition . . . of property made by the will to the former

13

spouse" and the "[p]roperty prevented from passing to a former spouse because of revocation by divorce . . . passes as if the former spouse failed to survive the decedent . . . ." *Id.* West Virginia Code § 41-1-6 further states that "[n]o change of circumstances other than as described in this section revokes a will." *Id.* This latter provision clearly contemplates that if, after executing a will in which a testator devises his or her **entire estate** to his or her spouse, and the testator later is divorced, the will is automatically revoked by operation of law and the decedent's estate passes as if the former spouse failed to survive the decedent. Such expression of legislative intent is reinforced by West Virginia Code § 41-1-7 (2010), which states that

> **[n]o will or codicil, or any part thereof, shall be revoked, unless under the preceding section [§ 41-1-6]**, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke.

W.Va. Code § 41-1-7 (emphasis added).

This Court has previously held that "'"[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. pt. 4, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984)." Syl. Pt. 1, *Kimes v. Bechtold*,

14

176 W.Va. 182, 342 S.E.2d 147 (1986). Indeed, "statutes which are not inconsistent with one another, and which relate to the same subject matter are *in pari materia*. Statutes *in pari materia* should be read and construed together, the primary purpose being to ascertain the intention of the Legislature." *State ex rel. Miller v. Locke*, 162 W.Va. 946, 947, 253 S.E.2d 540, 542 (1979). *See Manchin v. Dunfee*, 174 W.Va. 532, 536, 327 S.E.2d 710, 714 (1984) (stating that the rule of *in pari materia* "is most applicable to those statutes relating to the same subject matter which . . . refer to each other"). In consideration of the foregoing principles, this Court now holds that, pursuant to West Virginia Code § 41-1-6, if a testator divorces after executing a will in which the testator's spouse is the sole beneficiary of his or her estate, the divorce automatically revokes the will, unless the will expressly provides otherwise, and the estate passes in accordance with the statutes of intestate succession as if the former spouse failed to survive the decedent. Accordingly, because Ms. Kirby was the sole beneficiary named in the decedent's will, the divorce automatically revoked the will pursuant to West Virginia Code § 41-1-6, and the decedent's estate passed as if Ms. Kirby failed to survive him, in accordance with West Virginia Code § 42-1-3a.

Based upon the foregoing, it is clear that the case *sub judice* is readily distinguishable from the circumstances existing in *Cowan*. In the present case, the decedent's entire will was automatically revoked by operation of law when he and Ms. Kirby divorced. As such, the will was of no force and effect when presented for probate. As this

15

Court has previously observed, West Virginia Code § 41-5-11 "contemplates a test of the validity of the will. The word 'validity' has reference only to the validity of the probated paper as a testament, not to the validity of its provisions." *Mauzy v. Nelson*, 147 W.Va. 764, 770, 131 S.E.2d 389, 392 (1963). Thus, the period of limitations set forth in West Virginia Code § 41-5-11 simply does not apply to bar the respondent's Objection to Settlement and the county commission had jurisdiction to order that the decedent's estate "should pass to his heirs as if he had no Last Will and Testament[,]" pursuant to West Virginia Code § 41-1-6.[18] Accordingly, we find no error in the circuit court's June 23, 2011, partial summary judgment order quieting title in favor of the respondent.[19]

_____

[18]Finally, we note that the argument posited by the petitioners would require this Court to perpetuate an error that first occurred when the county commission mistakenly admitted the decedent's will to probate. Clearly, the county commission failed to recognize that, under West Virginia Code § 41-1-6, the will—which left the decedent's entire estate to Ms. Kirby, his then wife—was automatically revoked when the couple divorced and was, thus, void *ab initio*. Despite Ms. Kirby's unequivocal disclosures on documents prepared, filed, and recorded in connection with the probate process that she and the decedent were divorced at the time of his death, Ms. Kirby was, nevertheless, appointed executor of an estate in which she had no interest. Thereafter, when a title search of the subject property was conducted, the dispositive legal effect that the divorce had upon the will and Ms. Kirby's lack of title to the property were again overlooked. The county commission thus properly rectified the oversight in its April 1, 2009, order, as discussed above.

[19]In light of our holding that the circuit court properly concluded that the respondent is the sole heir of the decedent's estate and that title to the subject real property should be quieted in the respondent's favor, we need not address the petitioners' contention that the circuit court committed error in removing Ms. Kirby as Executor of the Estate.

16

## IV. Conclusion

For the reasons set forth above, the June 23, 2011, order of the Circuit Court of Monroe County is hereby affirmed.

Affirmed.